88 549
109 261

FANNIE E. COLLER v. ALBERT PORTER AND CHARLES A. COLLER.

*Partnership—Authority to borrow—Evidence.*

1. A general agreement by one partner on the dissolution of the firm to assume and pay all of the firm debts, without further specification, is not admissible in evidence on the part of the plaintiff in a suit subsequently brought against the firm to recover for money borrowed by the other partner for the use, as claimed, of the firm, which is denied by the partner making said agreement, who, as conclusively shown by the evidence, never recognized plaintiff's claim as a firm debt.

2. In a suit against a firm to recover for money loaned to one of

the partners, the other partner defended on the theory that the loan was for the individual use of the partner making it, with the knowledge of the plaintiff, while the plaintiff contended, and the testimony on her behalf tended to show, that it was necessary to use the money in the firm business, and that it was borrowed for that purpose. And it is held that the plaintiff was properly asked on her direct examination if she knew of any attempt on the part of the partner who made the loan to defraud his copartner, and, if he had taken advantage of him in any way, whether she had been a party to such action in any way, or had knowledge of it.

3. It appeared on the trial that the partner who made the loan was using the firm money for his individual use without charging it on the books; that he was also a borrower; that, although the manager of the business, he kept the firm books in such a condition as to prevent his copartner from knowing what he was doing; and that, if not actually engaged in defrauding him, he was grossly negligent, and acted in bad faith towards him in the conduct of the business. And it is held that said copartner was entitled to a searching cross-examination of his copartner when sworn in behalf of the plaintiff, and to inquire fully into his financial condition and transactions from the commencement of the business, and his intentions towards him, and to inquire if he did not know at the time he went into said business that he had no money with which to enter the same.

4. In the absence of an agreement to the contrary, either member of a firm engaged in the wholesale and retail grocery business has the right to borrow money for the purposes of the business.

5. Third parties have a right to rely upon such implied authority, and if they loan money in good faith to one partner, without knowledge or notice of such facts as would lead an ordinarily prudent person to suspect that the loan is made for the individual use of the partner making it, they can recover against the firm.

Error to Eaton. (Hooker, J.) Argued June 4, 1891. Decided December 21, 1891.

*Assumpsit.* Defendant Porter brings error. Reversed. The facts are stated in the opinion.

*John M. Corbin,* for appellant, contended:

1. Requests which clearly state the law, and which are applicable

to the case at bar, should be given to the jury, and it is error to refuse them, even though the court in his general charge gives their substance in another form; citing *Lumber Co. v. Lumber Co.*, 79 Mich. 307; *People v. Jacks*, 76 Id. 218.

2. Borrowing money on the credit of the firm is not necessarily within the scope of a partnership formed for the purpose of carrying on a retail business; citing Lindley, Part. 126; *Ricketts v. Bennett*, 4 C. B. 686; Story, Part. § 113; T. Parsons, Part. 103.

*H. F. & F. A. Pennington,* for plaintiff, contended:

1. Defendant Coller was the managing partner, and had full control of the business; purchased the goods, employed salesmen, made collections, and borrowed money, and under the circumstances had full power and authority to borrow the money of plaintiff, and bind the firm therefor; citing *Osborn v. Osborn*, 36 Mich. 48.

MORSE, J. This is an action of *assumpsit* for moneys claimed to have been loaned at different times to the firm of C. A. Coller & Co., composed of the defendants. The items as set forth in the bill of particulars are as follows:

1887.

| | | | | |
|---|---|---|---|---|
| Aug. 27. | To cash loaned defendants | | | $108 00 |
| Oct. 1. | To cash | " | " | 30 00 |
| Oct. 29. | To cash | " | " | 15 00 |
| Nov. 28. | To cash | " | " | 10 00 |
| 1888. | | | | |
| Jan. 5. | To cash | " | " | 15 50 |
| Feb. 25. | To cash | " | " | 30 00 |
| Mar. 26. | To cash | " | " | 22 50 |
| Apr. 24. | To cash | " | " | 20 00 |
| May 26. | To cash | " | " | 13 00 |
| Total | | | | $264 00 |

Plaintiff is a sister of Charles A. Coller, one of the defendants. Defendants formed a copartnership for the purpose of carrying on a retail grocery and provision store in the city of Eaton Rapids, and they commenced business on 27th of June, 1887, and ended on the 2d of September, 1888. Each partner was to put in $800, and they purchased the stock of one I. N. Reynolds. After

paying him $1,600, there was left an amount of $903.82 due him on the purchase price of the stock. It was settled up by giving the firm notes. The business was conducted by Charles A. Coller, Porter having nothing to do with the management thereof, trusting the business to Coller. Defendant Coller, who was book-keeper, kept no books that showed the entire business, and a portion of the time kept no cash-book, and had no way of telling the state of the business. His sister, the plaintiff, helped him post up the books Saturday evenings, and sometimes helped him about the store day-times, making entries in the books. The copartnership books contained no reference to the loaning of this money in any way. July 18, 1888, Coller took an inventory of the stock, and made a statement to Porter, which showed the stock and book accounts to be $4,955.91; indebtedness, $3,077.81; which left a balance of $1,878.10. In this statement there appeared no item of the alleged debt to his sister, or to Dr. Walter, a brother-in-law of Coller. The first defendant Porter learned anything of any debt claimed against the firm by plaintiff or Dr. Walter was when the defendant Coller gave a chattel mortgage on the stock to each one of them. On the 29th day of September, 1888, another inventory was taken, which showed the total assets to be $3,562.09, and the debts $3,568. Porter, on the 28th of September, 1888, bought out the interest of Coller in full. An agreement was entered into between them as follows:

"This agreement, made and entered into this 28th day of September, A. D. 1888, between Albert Porter, of the first part, and Charles A. Coller, of the other part, comprising the firm of C. A. Coller & Co., of the city of Eaton Rapids, witnesseth:

"*First.* That the firm of C. A. Coller & Co. is hereby dissolved by mutual consent; that the entire assets of said firm, including all book-accounts, notes, goods, wares, and

merchandise, or personal property of any kind belonging to the said firm of C. A. Coller & Co., are hereby sold, assigned, and transferred to Albert Porter.

"*Second.* That the said C. A. Coller is to procure the release of the chattel mortgage given by C. A. Coller & Co. to Hiram Walter, and a receipt in full from said Hiram Walter to any claim or demand that he may have or claim to have against the said firm of C. A. Coller & Co.

"*Third.* In consideration therefor the said Albert Porter is to assume and pay each, all, and every one of the firm debts now due and owing by said firm of C. A. Coller & Co., and save the said C. A. Coller harmless from any costs, trouble, or expense by reason of his liability as a partner to pay such firm indebtedness.

"*Fourth.* Said C. A. Coller hereby relinquishes any claim or demand which he may have against the said firm of C. A. Coller & Co.

"In witness whereof the parties hereto have hereunto set their hand and seal to this duplicate agreement the day and year first above mentioned.

"ALBERT PORTER. [L. S.]
"C. A. COLLER. [L. S.]"

Plaintiff had judgment in the court below for the full amount of her claim.

The admission of this agreement is alleged as error. It was admitted in evidence against the objection of defendant. The court told the jury that it could not be used to show a ratification of plaintiff's claim by Porter; that the contract was only to pay the legal debts of the concern, and that, if this was a debt legally due from the firm, then Porter was liable for it; if not, the contract did not increase his liability. There was some testimony tending to show that, before or at the time the contract was made, the claim of plaintiff was among the list of the firm debts which was presented to Porter; and the claim was no doubt made in the court below, as it is in this Court, that the fact that Porter provided in this contract that he would not pay the claim of Walter, and that Coller should procure the release of his mortgage,

and a receipt in full for such claim, and made no such provision in relation to the claim and chattel mortgage of plaintiff, was a circumstance showing that he recognized plaintiff's claim to be a valid one at that time. The evidence, however, is conclusive that he never recognized the debt, and we think that the introduction of this contract in evidence was irrelevant, and that it may have influenced the jury against the defendant Porter.

The following questions were asked of the plaintiff while she was on the stand:

"Now, you probably heard Mr. Corbin's remark, a while ago, upon the question as to your matters. Do you know of any attempt upon the part of your brother, in borrowing these sums from you, to defraud or wrong Mr. Porter?"

"If your brother has taken advantage of Mr. Porter in any way, have you been a party to it in any way, or known of it?"

"The theory of the defense is that you loaned this money, if at all, to your brother upon his individual responsibility, and upon his individual credit, and since the settlement you have allowed. Do you know of any such combination as that?"

These questions, under objection, were all answered in the negative. We think the questions were proper. The theory of the defense was that this money was borrowed by Charles A. Coller for his own individual use and benefit, with the knowledge of the plaintiff. The theory of the plaintiff was, and the testimony in her behalf tended to show, that it was necessary to use this money in the firm's business, and that it was borrowed for that purpose.

I. N. Reynolds, of whom the firm purchased the store business, was sworn as a witness for the defendants, and, being inquired of as to the amount of business that was done, was asked,—

"What were the indications so far as you were able to

judge, compared with the business you had been doing just previous to that time?"

The question was excluded. There was no error in so-doing.

The defendant Coller was asked, on cross-examination, if he did not know at the time he went into business that he had no money with which to go into business. One of the theories of the defense was that Coller had no money to go into business; that a portion of this money, if not all of it, borrowed of his sister, was used in paying money that he borrowed to go into business. Under the circumstances of the case, we think that the defendant Porter should have been allowed a very liberal cross--examination of this witness, and the question should have been permitted. It appears very plainly from the record that Coller was taking money out of the firm for his own individual use, and making no charge of it on the books; that he also was himself a borrower; that his books were in such a condition that his partner could not tell what he was doing; and the showing of the two inventories was such that it must be considered that Coller, if not actually engaged in defrauding the defendant Porter, was grossly negligent, and acted in bad faith towards him in the business. Considering the fact that Porter was not acquainted by either the plaintiff or the defendant Coller with the borrowing of this money by Coller until about the time of the dissolution of the firm; that no charge or memorandum was made by the defendant Coller on the firm books tending to show that it was loaned for the benefit of the firm; and under the circum--stances of the conduct of Coller, and the further fact that neither Coller nor the plaintiff could tell for what special purpose any of this money was used for the benefit of the firm, and there being no entry made any-

where of its use,—we think the defendant Porter was entitled to most searching inquiries into the financial condition and transactions of Coller from the first, and his intentions towards Porter.

The defendant's counsel requested the court to charge the jury, among other things, as follows:

"1. That, it appearing from the bill of particulars filed in this cause that the plaintiff's claim consists solely of items of cash lent to the defendants (who comprised the firm of C. A. Coller & Co.), the burden of proof is upon the plaintiff to show that both of the partners either consented to or ratified the making of these several loans, unless it appears that the making of such loans was clearly within the scope of said partnership business.

"2. It appearing from the evidence in the case that the defendants, C. A. Coller & Co., were engaged solely in the retail grocery business at the city of Eaton Rapids, neither partner, in the absence of an express agreement to that effect, or authority from the other partner, would have power to bind the copartnership by a loan of money, unless the expenses of the business demanded it.

"3. If you find from the evidence in this case that, by the terms of the copartnership agreement, as is claimed by the defendant Porter, no money was to be borrowed without the consent of both partners, then, and in that case, the burden of proof is upon the plaintiff to show that defendant Porter knew of or consented to the various loans claimed to have been made to defendants by plaintiff, or that he afterwards ratified them."

"7. The court instructs the jury that borrowing money on the credit of the firm is not necessarily within the scope of the partnership business, when the partnership is formed for the purpose of carrying on a retail grocery business."

Defendant's counsel argues that borrowing money on the credit of the firm is not necessarily within the scope of a partnership business, when the partnership is formed for the purpose of carrying on the retail grocery business,

and that these requests should have been given in the language of them. The court charged the jury, in relation to the third request, that, if there was an agreement between Coller and Porter that no money should be borrowed except by the consent of both, then Coller had no right to borrow this money. This was more favorable than the defendant asked in such request. The jury were also instructed, and we think correctly, that when partners were engaged in such a grocery business as this was, where they were doing a wholesale and retail business, they had the right to borrow money for the necessary purposes of the business; but, if it was not borrowed for the necessary purposes of the firm, the plaintiff could not recover, if she knew it was not borrowed for such purposes; but she had a right to rely upon the implied power of Coller to borrow money, and if she loaned the money in good faith, and did so without knowledge or notice of such facts as would lead an ordinarily prudent person to suspect that the loan was for her brother, she had the right to recover. We think the entire charge of the court was very fair to the defendant Porter, and stated the law clearly.

For the errors above mentioned judgment must be reversed, and a new trial granted, with costs of this Court to defendant Porter.

The other Justices concurred.